UNITED STATES v. FRAZER.

*(District Court, N. D. Illinois.  October 20, 1884.*

PATENTS FOR INVENTIONS—BILL BY UNITED STATES TO ANNUL FRAUDULENT PATENT IN INTEREST OF PRIVATE PARTIES.

    A bill in chancery to annul a patent, on the ground that the patentee falsely and fraudulently made oath that the alleged improvements had not been before known or used, when in fact the process described in such patent had been fully described in a patent issued to him previously, and since expired, will not lie in the name of the United States when the suit is really in the interest of private parties who have given bond to indemnify the government from all costs of suit, and who could themselves set up such matters as a defense in a suit against them by the patentee.

Bill to Cancel Patents.

*E. A. West* and *R. S. Tuthill,* for complainant.

*Coburn & Thacher,* for defendant.

BLODGETT, J. This is a demurrer to a bill filed to cancel two patents, the first dated September 9, 1879, and the second dated October 19, 1880, both being issued to defendant for "improvements in axle-grease." The right to cancel these patents is claimed on the ground that the defendant, in order to obtain them, falsely and fraudulently made oath that the alleged improvements had not been before known or used, when, in fact, they had been publicly known and used more

than two years prior to the application made therefor; and that the process described in the patents was fully described in a patent issued to the defendant himself in October, 1860, which has long since expired. The bill avers that the defendant Frazer, in 1863, commenced, in the city of Chicago, the manufacture of axle-grease under what he pretended was the process covered by his patent of 1860; and after conducting the said business for some time, he sold it out to several persons, named in the bill, and they, after conducting the business for some time as his successors, formed a corporation which has, since that time, conducted the same business; that since he sold his business the defendant has obtained the patents now in question and again resumed business, claiming that these two patents cover the device and process which such corporation is now using and which defendant so sold to said persons. This allegation, taken together with a letter from the attorney general of the United States which was filed with the bill, and appears as part of the record, shows, in substance, that this bill was prepared here by a firm of well-known attorneys, who make patent cases their specialty, and submitted to the attorney general, who transmitted it to the district attorney here, with directions to file it upon sufficient bond being filed to indemnify the United States against all costs and expenses on account of this proceeding.

The averments in the bill, with the letter from the attorney general, show that the persons or corporation who claim to be aggrieved by the conduct of the defendant after he had sold them the exclusive right to manufacture this composition, have obtained the use of the name of the United States for the purpose of conducting a suit of their own in regard to the validity of this patent. The facts set out in the bill concerning the device described in the two patents of 1879 and 1880, if true, are sufficient to defeat this patent. They are such as are set up in very many if not almost all patent controversies where the question of the novelty and validity of the patent is challenged, and such as almost every patentee is called on in some form to meet. It is true that it is an imposition on the patent-office to falsely make an affidavit that a device for which a patent is asked has not been known and used prior to the invention thereof by the applicant for the patent. Such conduct may justly be said to be fraudulent; but it is a fact which goes to the validity of his patent, and may be pleaded by any person against whom the patentee brings suit; and it seems to me that it would be better to leave the litigation of questions like this, which constitute a defense in patent cases, to the parties directly interested, rather than that the government should lend its name to a suit really in the interest only of certain private parties.

The practice here inaugurated will, if followed, transfer nearly all litigation on patents, except mere questions of fact as to infringement, to the office of the attorney general, instead of leaving it in the hands

of the persons directly interested. Patentees, as a rule, have trouble enough to establish their patents without being in peril at any time during the life of their patents of a suit, in the name of the United States, brought at the instance of interested parties, but not bound by any prior judgment or decree sustaining the patent. If the granting of the patent was conclusive upon the public of the questions of fact upon which the patentee's right to it depends, I can readily see that some mode of proceeding to cancel the patent for false and fraudulent statements in obtaining it would be almost necessary for the protection of the public; but the issue of the patent is not conclusive upon any of these questions. All questions as to the novelty and utility of the alleged invention and its prior use to such an extent as to make it public property can be raised as a defense by any person who is charged with infringement of the patentee's exclusive rights. The patentee takes his patent subject to all these defenses, and must be prepared to meet them if the validity of his patent is denied.

The bill in question is not authorized by any special statute of the United States. There is a statute that authorizes the bringing of a bill between interfering patentees, where two patents are issued for the same, or substantially the same, device, and the fact that congress did not authorize bringing a bill of this character is certainly a strong argument in favor of the view that it was not intended that bills of this character should be brought, and that they intended if a party took a patent he should take it subject to being defeated by those interested in its defeat, by traversing any and all facts upon which his claim to the patent is based. Another consideration of some weight in my mind is the fact that the public at large, the patent-office, and the United States have rested for about five years, in reference to these patents, without raising any question as to their validity, and it is now only at the instance of parties who are specially and directly interested in their defeat, and who, by the showing of the bill, have a complete defense against both these patents, that the name of the government is lent to these contestants under which to attack these patents, and that only upon a guaranty that the government is to incur no costs. If this suit can be maintained by these individuals in the name of the government, upon the conditions named by the attorney general, the next applicant for leave to bring a similar suit may have an equally meritorious case, but no means to idemnify the government against costs, and the question will arise whether he is to be denied the right to use the name of the United States because of his poverty.

It must be conceded, upon the allegations of this bill, that the defendant has acted dishonestly, both in the false statements by which he obtained his patents, and in his dealings with the persons to whom he sold his business and the right to use his process under his older patent; but the fact of such dishonesty does not clothe this court with jurisdiction to entertain a suit in the name of the United States

to cancel the patent, when it is apparent that the name of the government is only colorably used, and that the suit is really prosecuted by private persons. Would it not be better to leave the attack upon such patents as have been obtained by false suggestions where they have heretofore been left, as defenses to the validity of the patents? My attention was called upon the argument to *Mowry* v. *Whitney*, 14 Wall. 434, but I do not find in that case any authority for sustaining this bill.

I do not intend to be understood as holding that a bill in chancery will not lie in any case to annul a patent obtained by fraud, but only that this bill does not, in my opinion, make such a case as requires or authorizes the United States to allow the use of its name to fight out a contest between these individuals.

The demurrer to the bill is sustained, and the bill dismissed for want of equity.

See *U. S.* v. *Gunning*, 18 FED. REP. 511.